### Hanover Fire Ins. Co. v. Barber et al.

Nov. 21, 1939.

572

Frank M. Drake and Wm. A. Minihan for appellant.

J. A. Edge for appellees.

OPINION OF THE COURT BY CREAL, COMMISSIONER—
Reversing.

On August 18, 1932, the Hanover Fire Insurance Company, hereinafter referred to as the company, issued to Theodore and Fannie Barber, husband and wife, a fire insurance policy insuring them in the sum of $750 for a term of one year against loss or damage by fire to their residence in Lexington. On June 22, 1933, the residence was partially destroyed by fire and Theodore Barber and wife sued to recover the principal sum of the policy alleging that the residence had been destroyed by fire while the policy was in full force and effect.

The company traversed the allegations of the petition and pleaded as an affirmative defense that it had canceled the policy on December 19, 1932. The cause was referred to the master commissioner of the court who after hearing the evidence filed a report which was confirmed by the court and judgment was rendered in conformity therewith for plaintiff in the sum of $547 less $3.56 balance due on premium. The company is appealing.

As stated by the commissioner in his report the single issue presented is whether the policy issued by appellant to appellee was effectively canceled before the loss. While counsel for appellant differ with the commissioner's finding of law they state in brief that they accept in main the statement of facts found by him and approved by the chancellor wherein in summing up he stated:

"From the pleading and evidence the Commissioner finds as a matter of fact that on August 18th, 1932, the defendant, Hanover Fire Insurance Com-

pany, issued to the plaintiffs, Theodore Barber and Fannie Barber, a policy of insurance whereby it insured for the term of one year, from August 18th, 1932, at noon to August 18th, 1933 at noon, against all loss or damage by fire and lightning to an amount not exceeding $750.00, the property located at No. 517 East Second Street, Lexington, Kentucky; that the defendant extended credit to the plaintiffs in the payment of the premium on said policy which amounted to the sum of $5.56, and that the plaintiffs paid to the defendants' agent on August 27th, 1932, the sum of $1.00 to be credited on the premium and on October 19th, 1932 the further sum of $1.00 as a credit on said premium, and that no further payment was made by the plaintiffs, leaving a balance of $3.56 remaining unpaid on the premium; that on December 19th, 1932, the defendant, through its agent, demanded payment of the balance of the premium and that, payment not having been made, the defendant thereupon notified the plaintiff, Theodore Barber, that the policy was canceled; that at the time said notice was given the unearned part of the premium paid by the plaintiffs, on said policy amounted to 12c, and that the defendant has never paid or tendered to the plaintiffs the unearned part of the premium paid on said policy.

"The commissioner further finds as a matter of fact that on June 22nd, 1933, the property covered by said policy was partially destroyed by fire and that the damage resulting therefrom amounted to the sum of $547.00."

The commissioner found as a matter of law that the policy had not been effectively canceled but was in full force and effect at the time the property covered thereby was partially destroyed by fire.

The policy contained the following provisions with respects to the right of cancellation:

"This policy shall be canceled at any time at the request of the insured; or by the company by giving five days' notice of such cancellation. If this policy shall be canceled as hereinbefore provided, or become void or cease, the premium having been actually paid, the unearned portion shall be returned on surrender of this policy or last renewal, this

company retaining the customary short rate; except that when this policy is canceled by this company by giving notice it shall retain only the prorata premium.''

In making his finding of law the commissioner as is revealed by the report followed what he conceived to be the majority rule that an effective cancellation of a policy like the one under consideration by the insurer by giving notice can only be made by a return or tender of the unearned premium.

In a well prepared and exhaustive report the commissioner cited and discussed a number of authorities bearing on that rule including the domestic case of Continental Insurance Company v. Daniel, 25 Ky. Law Rep. 1501, 78 S. W. 866, 868. In that case the premium had been paid on a policy for the full term. There was evidence for the company that on July 29 its agent tendered to Daniel the premium paid and informed him that the policy was canceled from that date and he refused to accept the money. It was further in evidence that on August 10, 1931, the agent for the company prepared a written notice to Daniel that his policy was canceled and placed same in an envelope with $4.50 in cash in the postoffice sealed and registered. The postal authorities notified Daniel that the letter was in the office and he came in response to the notice but refused to accept it. The property was destroyed by fire on August 14. In an action on the policy the company pleaded cancellation. The court instructed the jury in substance that they should find for the plaintiff the principal sum of the policy unless they believed from the evidence that five days or more before plaintiff's house burned defendant by its agent had given him written or verbal notice that the policy had been canceled and further believed that five days or more before the loss complained of, the premium paid for the policy had been paid or tendered back to him.

In affirming the judgment for plaintiff the court said:

''Under the instruction of the court, if the jury had believed from the evidence that the tender of this premium was made on July 29th, and that he was then informed that the policy was canceled and would be no longer in force from that date, the jury must have found for appellant; but it seems that the

jury believed the statement of appellee, corroborated by the notice and tender of August 10th, in which it was stated that the policy was canceled on 'that' date, which was less than five days prior to the burning of the house.''

In that case as in all the other cases referred to in the commissioner's report we find that the premium had been paid for the full term or at least enough had been paid on the premium to carry the policy beyond the date of the loss complained of. Here an entirely different situation is presented since the two installments paid by appellee only carried it to December 27, 1932, and the loss did not occur until the following June. The agent for the company testified that some time in December he went to see Mr. Barber and told him the amount he had paid on the premium had been consumed or had been earned and that unless he made further payments the policy would be canceled and on December 9 he told him his policy was canceled. The policy was there upon returned to the company and was canceled and destroyed.

Unquestionably the majority rule as stated by the commissioner and supported by authorities cited in his report would apply if the loss in this instance had occurred on or before the date to which the aggregate amount of the installments paid carried the policy. To have terminated coverage by cancellation of the policy before that date it would have been necessary for appellant to comply with the provisions of the policy with respect to notice of the purpose to cancel and to have returned or tendered return of any unearned premium on the basis fixed by the policy. None of the authorities referred to hold or indicate that in circumstances shown in the present case liability under the policy would extend beyond the day to which the premium paid carried the policy. On the other hand, there is a very respectable authority holding otherwise.

We regard the case of Hamburg-Bremen Fire Insurance Company v. Browning, 102 Va. 890, 48 S. E. 2, 4, as directly in point and conclusive of the question presented for decision. In that case it appears that a firm of insurance agents who represented a number of different companies wrote policies in different companies on separate pieces of property owned by Browning but premiums were not paid in full when the policies were issued but were charged to the account of Brown-

ing. The agents sent Browning repeated notices that there was a balance due on his account and that the companies were complaining of the failure of the agents to remit and were ordering cancellation if premiums were not paid at once. On July 21, 1897, the agents drew a draft on Browning for the balance due. The draft was not honored and Browning gave no attention to the matter. On August 2, 1897, the agents sent Browning by registered mail a notice that the policies had been canceled and that the several companies acknowledged no further liability thereunder. This notice showed that insured was entitled to a return of unearned premiums to the amount of $6.80 on some or all of the policies. The notice of cancellation was received by Browning but he treated it with silence and neglect. He did however, procure insurance elsewhere on some of the property covered by the canceled policies and made no claim that the canceled policies were in effect until after February 11, 1898, when a stable and its contents covered by one of such policies in the sum of $1,750 was destroyed by fire. In a suit to recover that sum on the policy the company defended on the ground that the policy had been canceled prior to the date of the loss. On appeal the judgment was reversed. Browning made practically every contention that is made by appellee here, one being that the policy could not be canceled except in strict compliance with the terms thereof which provided that when canceled the unearned premium should be returned and this was not done.

In the opinion reversing the judgment of the lower court among other things it was said:

"The uncontradicted evidence shows that all of the policies canceled earned $15.81 per month; in other words, it required that amount each month to keep them alive. It further appears that it required $2.55 per month to keep the policy sued on alive. If the cancellation was defective by reason of the $6.80 not having been returned, it was certainly good and sufficient notice to the defendant in error that the policies had only $6.80 to keep them alive. He knew that they could not be kept alive unless the premiums were paid, and also knew that the companies would no longer carry his insurance on credit. Applying the $6.80 to keeping all of the policies alive, they would have expired in less than two weeks. If the whole of the $6.80 had been applied

to keeping the policy sued on alive, it would have expired in less than three months. The fire did not occur for more than six months after the cancellation notice, at which time the policy sued on had long since elapsed by the nonpayment of premium."

In that case as here the insured was advised and understood that the policy would not be carried on credit and that unless the premium was paid the policy would be canceled. He was advised in advance that the policy would be canceled if he did not make payment on the policy and was later advised that it had been canceled because he failed to make payment. It is true that the agent was laboring under the mistaken impression that the sums paid by appellee had all been earned. In fact as revealed by the record there was sufficient unearned premium to keep the policy alive eight days longer. Although the attempted cancellation of the policy could not become effective so long as there was unearned premium that had been paid without return or tender of return of such premium, in the proven circumstances, we are constrained to hold that it did become effective immediately upon expiration of the additional time to which the unearned premium carried the policy which was practically six months before the loss occurred.

Wherefore, the judgment is reversed with directions to set it aside and enter judgment in conformity with this opinion.